UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| **NORMA EGAN, individually and on behalf of all others similarly situated,** <br><br> Plaintiff, <br><br> v. <br><br> **X-MODE SOCIAL, INC.,** <br><br> Defendant. | Case No. 23-cv-11651-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                       **May 24, 2024**

### I.    Introduction

Plaintiff Norma Egan ("Egan"), individually and on behalf of all others similarly situated, has filed this lawsuit against X-Mode Social, Inc. ("X-Mode"), alleging unjust enrichment (Count I) and a violation of Mass. Gen. L. c. 93A ("Chapter 93A") (Count II). D. 26. X-Mode has moved to dismiss Egan's first amended complaint ("FAC") under Fed. R. Civ. P. 12(b)(1), (2) and (3) for lack of standing and personal jurisdiction and for improper venue. D. 27. X-Mode also moves to dismiss the FAC under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Id. In the alternative, X-Mode urges the Court to transfer the case to the U.S. District Court for the Eastern District of Virginia under 28 U.S.C. § 1406(a) and § 1631. Id. For the reasons stated below, the Court ALLOWS X-Mode's motion to dismiss, D. 27, and dismisses the case without prejudice.

1

## II. Standards of Review

### A. Rule 12(b)(1) Motion to Dismiss for Lack of Standing

To consider a Rule 12(b)(1) motion to dismiss a complaint for lack of subject matter jurisdiction, "the district court must construe the complaint liberally, treating all well-pleaded facts as true and indulging all reasonable inferences in favor of the plaintiff." Aversa v. United States, 99 F.3d 1200, 1209–10 (1st Cir. 1996) (citing Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995)). The Court may widen its gaze, however, and look beyond the pleadings to determine jurisdiction. Martínez-Rivera v. Puerto Rico, 812 F.3d 69, 74 (1st Cir. 2016) (citing cases for the proposition that the court can "rely on facts outside the pleadings" to decide a Rule 12(b)(1) motion). "[T]he party invoking the jurisdiction of a federal court carries the burden of proving its existence." Murphy, 45 F.3d at 522 (quoting Taber Partners, I v. Merit Builders, Inc., 812 F.3d 57, 60 (1st Cir. 1993)).

Standing is a jurisdictional issue, see P.R. Tel. Co. v. T-Mobile P.R. LLC, 678 F.3d 49, 57 (1st Cir. 2012), and, accordingly, challenges to standing are properly considered under Rule 12(b)(1). See Kolancian v. Snowden, 532 F. Supp. 2d 260, 261 (D. Mass. 2008).

### B. Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

In ruling on a motion to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2) without an evidentiary hearing, a district court must apply the prima facie standard of review. United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 618 (1st Cir. 2001). Under the prima facie standard, the plaintiff must "demonstrate the existence of every fact required to satisfy both the forum's long-arm statute and the Due Process Clause of the Constitution." Id. (citing United Elec. Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 987 F.2d 39, 44 (1st Cir. 1993)). The Court considers the facts alleged in the pleadings as well as the parties' supplemental

filings. Sawtelle v. Farrell, 70 F.3d 1381, 1385 (1st Cir. 1995); Ticketmaster-N.Y., Inc. v. Alioto, 26 F.3d 201, 203 (1st Cir. 1994). The Court will "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). In doing so, the Court will "not credit conclusory allegations or draw farfetched inferences." Ticketmaster, 26 F.3d at 203. The Court is also required to "add to the mix facts put forward by the defendants, to the extent that they are uncontradicted." Mass. Sch. of Law, 142 F.3d at 34.

### III.  Factual Background

The following facts are alleged in the FAC, D. 26, and are taken as true for purposes of considering X-Mode's motion to dismiss.

Egan is a resident of Somerville, Massachusetts. Id. ¶ 14. In or around January 2021, she downloaded a third-party application (the "App") on her mobile phone that allows users to see their family members' locations. Id. The App integrated software that enabled X-Mode, a third party, to track, collect and sell Egan's location data without her consent. Id. ¶¶ 14–15, 18.

X-Mode is a Delaware corporation, with its principal place of business in Herndon, Virginia, involved in the collection and sale of mobile application ("app") users' location data. Id. ¶¶ 17–18. As alleged, X-Mode pays mobile app developers to integrate its "XDK" software into apps. Id. ¶¶ 18, 20. X-Mode advertises XDX as "an 'easy' way for app owners to earn revenue," including "passive revenue from your users." Id. ¶ 22. Once XDX is integrated into a mobile app, X-Mode is able to track and collect, in real-time, the "geolocation" data of users running the app on their mobile devices, id. ¶¶ 23, 25, 28, including their IP addresses and latitude and longitude coordinates. Id. ¶¶ 26–27. X-Mode also uses the "device ID," known as a Mobile Advertising ID

3

("MAID"), to tie geolocation data to a particular mobile device.  Id. ¶¶ 36–37.  According to Egan, "[e]ven if an individual were aware of [XDX], they would have no ability to disable the transmissions."  Id. ¶ 24.

Once collected, X-Mode sells geolocation data to a broad range of clients.  Id. ¶¶ 28–29.  In or about June 2019, X-Mode stated that it was "committed to making our data available to as many people as possible" and began marketing its geolocation data on Amazon Web Services Marketplace.  Id. ¶ 30.  Egan also asserts that X-Mode has touted the "scale" of its data to include "60M+ global MAU (Monthly Active Users), 400+ mobile app publishers with our XDX, [and] 25% of the adult U.S. population monthly."  Id. ¶ 32.  X-Mode's clients can purchase geolocation data for a variety of ends, including the improvement of advertising campaigns.  Id. ¶¶ 33–37.  For example, a client can purchase or license historical and real-time location data to determine whether an app user has visited its store within hours or days after seeing its advertisement online.  Id. ¶ 33.  Relatedly, "X-Mode can send data in near-real time of folks who have walked by [a client's] kiosk or billboard to retarget them online based on when they walked by the kiosk" by matching "the timestamp of when the ad was shown to the timestamp of when the device ID was near the kiosk."  Id. ¶ 35.

Egan asserts that X-Mode has faced controversy over its handling of app users' data and privacy.  Id. ¶ 39.  For instance, Egan alleges that "X-Mode was banned from most app stores after it was discovered that the company was selling location data from Muslim prayer apps like Muslim Pro to U.S. government contractors associated with national security, raising concerns about unconstitutional government surveillance."  Id.  Egan further asserts that geolocation data and MAIDs "may be used to track consumers to sensitive locations, including places of religious worship, places that may be used to infer an LGBTQ+ identification, domestic abuse shelters,

4

medical facilities, and welfare and homeless shelters." Id. ¶ 40. As alleged, X-Mode "employs no technical controls to prohibit its customers from identifying consumers or tracking them to sensitive locations." Id. ¶ 45.

## IV. Procedural History

On July 25, 2023, Egan filed the complaint against X-Mode. D. 1. On October 27, 2023, Egan amended the complaint, filing the FAC. D. 26. X-Mode has moved to dismiss the FAC or, alternatively, to transfer the case. D. 27. Simultaneously, X-Mode moved to stay discovery. D. 29. The Court heard the parties on the pending motion to dismiss and took the matter under advisement. D. 44.

## V. Discussion

### A. X-Mode's Rule 12(b)(1) Motion to Dismiss for Lack of Standing

X-Mode argues that the FAC should be dismissed under Fed. R. Civ. P. 12(b)(1) because Egan has not suffered a sufficient injury-in-fact to establish standing under Article III of the United States Constitution. D. 28 at 14–17. "The federal courts are required to determine whether Article III jurisdiction exists prior to proceeding to the merits of the case." United Seniors Ass'n, Inc. v. Philip Morris USA, 500 F.3d 19, 23 (1st Cir. 2007). Article III restricts a federal court's jurisdiction to actual cases and controversies. U.S. Const. art. III, § 2. An actual "case or controversy" exists when "the party seeking to invoke the court's jurisdiction (normally, the plaintiff) has a 'personal stake in the outcome' of the claim asserted." Pagán v. Calderón, 448 F.3d 16, 27 (1st Cir. 2006) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). To satisfy the personal stake requirement, three elements must be met: "[1] a would-be plaintiff must demonstrate a concrete and particularized injury in fact, [2] a causal connection that permits tracing the claimed injury to the defendant's actions, and [3] a likelihood that prevailing in the action will

afford some redress for the injury." Me. People's All. & Nat. Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006); Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (recognizing that "plaintiff must establish each part of a familiar triad: injury, causation, and redressability").

X-Mode argues that Egan has not been injured. D. 28 at 14–17. "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" Spokeo, Inc. v. Robins, 578 U.S. 330, 339 (2016) (quoting Lujan v. Defs. of Wildlife, 504 U.S. 555, 560 (1992)). Although "[t]he most obvious" concrete harms are tangible (e.g., physical or monetary), "[v]arious intangible harms can also be concrete." TransUnion LLC v. Ramirez, 594 U.S. 413, 425 (2021). These include injuries "with a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts," such as "reputational harms, disclosure of private information, and intrusion upon seclusion." Id.

X-Mode maintains that an injury of constitutional significance requires Egan to assert more than the mere collection and disclosure of her geolocation data. D. 28 at 14. Although this alleged harm may be "intangible," the disclosure of private information cannot be dismissed as insufficiently concrete or particularized. See TransUnion LLC., 594 U.S. at 425. As observed by the Third Circuit, "[i]n an era when millions of Americans conduct their affairs increasingly through electronic devices, the assertion . . . that federal courts are powerless to provide a remedy when an internet company surreptitiously collect[s] private data . . . is untenable." In re Google Inc. Cookie Placement Consumer Priv. Litig., 934 F.3d 316, 325 (3d Cir. 2019). Even assuming *arguendo* that the unauthorized collection or disclosure of private information is not an injury, Egan also alleges that, by selling her location data without her consent, X-Mode unjustly enriched

6

itself at her expense. Given that the disgorgement of unjustly earned profits is permitted under Chapter 93A, see Tyler v. Michaels Stores, Inc., 464 Mass. 492, 504 n.20 (2013) (explaining that "[d]isgorgement of the merchant's profits may provide an appropriate means of calculating damages . . . because it is a close approximation of the value of the consumer's personal identification information"), Egan has alleged an injury sufficient to confer standing Article III. See, e.g., In re Facebook, Inc. Internet Tracking Litig., 956 F.3d 589, 599–601 (9th Cir. 2020) (holding that plaintiffs sufficiently alleged an injury where they had alleged that Facebook unjustly enriched itself through the use of their data and where California law recognized a right to disgorgement of profits from unjust enrichment); Murphy v. Kochava, Inc., No. 23-cv-00058-BLW, 2023 WL 6391061, at *3–4 (D. Idaho Oct. 2, 2023) (concluding that plaintiffs alleged an Article III injury where they had alleged that defendant "sold *their* personal geolocation data and associated MAIDs without authorization, and that in doing so, [defendant] unjustly earned profits") (emphasis in original). Accordingly, dismissal of the FAC is not warranted under Fed. R. Civ. P. 12(b)(1).

### B.      X-Mode's Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction

X-Mode argues that the Court lacks personal jurisdiction over it because X-Mode is not a Massachusetts corporation and has no forum-specific contracts. D. 28 at 10–13. Given the parties' agreement that the Court lacks general jurisdiction over X-Mode, id. at 10–11; D. 26 ¶ 17, the Court considers only whether it has specific jurisdiction over X-Mode.

To establish specific personal jurisdiction, Egan "must demonstrate that the Massachusetts long-arm statute grants jurisdiction over [X-Mode] and that the exercise of that jurisdiction comports with the Due Process Clause of the Fifth Amendment." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007). "Because the [Massachusetts] long-arm statute imposes specific constraints

on the exercise of personal jurisdiction that are not coextensive with the parameters of due process . . . a determination under the long-arm statute is to precede consideration of the constitutional question." SCVNGR, Inc. v. Punchh, Inc., 478 Mass. 324, 325 (2017).

Here, neither party addresses the requirements of the Massachusetts long-arm statute, but instead dispute whether the exercise of personal jurisdiction comports with due process. See D. 28 at 11 n.5 (asserting by X-Mode that Egan's failure to "establish personal jurisdiction under the constitutional inquiry necessarily dooms the inquiry under Massachusetts' long-arm statute as well"); D. 34 at 11 n.2 (urging by Egan that the Court "sidestep" the "statutory inquiry of the Massachusetts long arm statute"). Since, as discussed below, Egan has not shown that the requisite, constitutional standard is met, the Court need not address the analysis under the long-arm statute. The Court now turns to the constitutional analysis.

The specific jurisdiction analysis involve three inquiries: relatedness, purposeful availment and reasonableness. Astro-Med, Inc., 591 F.3d at 9 (citations omitted).

### 1. Relatedness

The relatedness inquiry focuses on whether "the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities." Id. This is a "flexible, relaxed standard," id. (internal quotation marks and citation omitted), but still requires a causal relationship between the Egan's claim and X-Mode's forum-related conduct. Harlow v. Children's Hosp., 432 F.3d 50, 61 (1st Cir. 2005). Though not precisely proximate cause, "due process demands something like a 'proximate cause' nexus." Id. (quoting Cambridge Literary Props. Ltd. v. W. Goebel Porzellanfabrik G.m.b.H & Co. Kg., 295 F.3d 59, 65 (1st Cir. 2002)).

A website or app's forum-state collection of location data does not automatically relate to claims arising from the out-of-state handling and disclosure of that information. Compare Alves

8

v. Goodyear Tire & Rubber Co., No. CV 22-11820-WGY, 2023 WL 4706585, at *2–3, *6 (D. Mass. July 24, 2023) (holding that a website's collection of data from Massachusetts residents was unrelated to the out-of-state use of "Session Replay Code technology" to create a video replay of the user's behavior on the website for analysis by an out-of-state marketing team), with Rancourt v. Meredith Corp., No. 22-cv-10696-ADB, 2024 WL 381344, at *10 (D. Mass. Feb. 1, 2024) (finding relatedness where, "unlike in Alves, [plaintiff] has proffered evidence showing that [defendant]'s use of advertising and content curation that targets individual Massachusetts residents (as it does residents of other states) increases user engagement with the App, thus allowing [defendant] to collect and disclose more of users' information").

Here, Egan's unjust enrichment and Chapter 93A claims rest on the unauthorized sale of her geolocation data by X-Mode, a Delaware corporation headquartered in Virginia. D. 26 ¶¶ 69–72, 84–88. X-Mode's only alleged forum-state activity, however, is the collection of Massachusetts app users' geolocation data through XDX. Id. ¶ 2. Unlike Rancourt, Egan has not alleged that X-Mode targets Massachusetts app users with advertisements to promote the further collection and disclosure of Massachusetts-based data; the FAC merely alleges that X-Mode sells geolocation data to other third parties. See, e.g., id. ¶¶ 15–16. X-Mode's CEO attests that "X-Mode has no business dealings with the end users of mobile device applications, including any such end users in Massachusetts" and that "X-Mode has never used location data to identify or interact with the end users of mobile device applications, including such end users in Massachusetts." D. 28-1 ¶¶ 12–13. Accordingly, Egan has not met her burden to show relatedness between the initial collection of her geolocation data through the App and X-Mode's subsequent sale of same to unspecified third parties, i.e., the circumstances from which Egan's claims directly arise.

      2.    *Purposeful Availment*

"The purposeful availment requirement ensures that jurisdiction is not premised on 'random, isolated, or fortuitous' contacts with the forum state." Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 245 (D. Mass. 2012) (citing Sawtelle, 70 F.3d at 1391). The inquiry into purposeful availment focuses on acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement, 326 U.S. 310, 319 (1945)). "Where companies now have the ability to operate websites that can be accessed by anyone with an internet connection, something beyond the availability of a website in a state is needed to establish personal jurisdiction over an out-of-state corporate defendant." Rancourt, 2024 WL 381344, at *7. Recognizing as much, the First Circuit has found no purposeful availment where the plaintiff failed to "show[ ] that the website either [1] specifically targets the forum or [2] has resulted in the defendant's knowing receipt of substantial revenue from forum residents." Kuan Chen v. U.S. Sports Acad., Inc., 956 F.3d 45, 60 (1st Cir. 2020).

There is no indication on this record that X-Mode has specifically targeted Massachusetts. As alleged, X-Mode integrates its XDX software into mobile apps that, much like websites, can be accessed by "anyone with an internet connection" and the appropriate device, regardless of the user's actual location. D. 26 ¶ 18; see Rancourt, 2024 WL 381344, at *7. Egan's location data was not collected because X-Mode deliberately singled out Massachusetts, but because Egan downloaded and used an app which embedded X-Mode's XDX software.[1]  See D. 26 ¶¶ 14, 21;

---

[1] To the extent Egan implies in the FAC that X-Mode deliberately collected the data of Massachusetts app users because the state has "consistently ranked as one of the most prosperous states in the United States," D. 26 ¶ 10, this assertion is both conclusory and speculative and also

D. 34-1 ¶ 2.  X-Mode otherwise has no presence in Massachusetts.  As alleged in the FAC, X-Mode "is a Delaware corporation with its principal place of business in Herndon, Virginia" and "does not own any property in Massachusetts."  D. 26 ¶ 17.  X-Mode CEO attests to same, D. 28-1 ¶¶ 2–3, and adds that X-Mode "has never maintained an office, facility, or telephone listing in Massachusetts," "has never owned or leased property in Massachusetts," "has no employees in Massachusetts," "is not registered to do business in Massachusetts," and "has never specifically targeted Massachusetts citizens or entities with advertising."  Id. ¶¶ 4–9.  X-Mode also has no business dealings with app users in Massachusetts and has never used location data to identify or interact with app users in Massachusetts.  Id. ¶¶ 12–13.

Even absent evidence of specific targeting, however, personal availment may be shown by the defendant's knowing receipt of substantial revenue from forum residents.  Chen, 956 F.3d at 60.  "Under appropriate circumstances, a defendant corporation's regular course of sale[s] in the [forum] could make exercise of jurisdiction foreseeable to the defendant."  Id. at 59 (alteration in original) (internal quotation marks and citation omitted).  There are no allegations in the FAC that X-Mode engaged in a regular course of selling geolocation data to Massachusetts customers.  The FAC alleges that X-Mode derives its revenue from selling data to unspecified "customers," with no indication of whether these customers were Massachusetts-based.  See D. 26 ¶ 29.  Accordingly, Egan has not shown that X-Mode engaged in a regular course of sales to forum residents or otherwise knowingly received substantial revenue from Massachusetts.  Chen, 956 F.3d at 59.

---

belied by other allegations in the FAC indicating that the location associated with any data collected through XDX depends on where the app user downloads and uses the XDX-integrated app (which could be in any state, irrespective of the its economic standing).  See id. ¶¶ 18–21; Rancourt, 2024 WL 381344, at *7.

Egan insists that X-Mode has "concede[d] that it sold its data specifically to Massachusetts consumers," D. 34 at 14, apparently because X-Mode's CEO attests that "location data from mobile devices seen in Massachusetts account[s] for only 0.152% of X-Mode's acquired location data." D. 28-1 ¶ 11. While a low proportion of revenue generated from the forum does not necessarily foreclose the exercise of personal jurisdiction, see, e.g., Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc., 43 F.4th 150, 164 & n.11 (1st Cir. 2022) (finding purposeful availment where revenue from Puerto Rico constituted 0.0025% of the defendant's total revenue and where the defendant had "entered into an agreement . . . with a Puerto Rico company"), the attestation here speaks to the low percentage of location data acquired from mobile devices in Massachusetts, not revenue or the amount of revenue that the sales of such data generates. Here, the FAC is devoid of allegations regarding any substantial revenue being generated from same, see Chen, 956 F.3d at 60. Because Egan has not made a "prima facie" showing of facts indicating that X-Mode specifically targeted Massachusetts, or knowingly received substantial revenue from forum residents, Chen, 956 F.3d at 60, she has not satisfied the purposeful availment requirement.[2]

3.   *Reasonableness*

The reasonableness inquiry is based on a balancing of the following "Gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests

---

[2] At oral argument, D. 46 at 14, Egan relied upon Greenley v. Kochava, No. 22-cv-01327-BAS-AHG, 2023 WL 4833466, at *1 (S.D. Cal. July 27, 2023), to argue that the Court may exercise personal jurisdiction over X-Mode. That case did not involve a motion to dismiss under Rule 12(b)(2) for lack of personal jurisdiction, but a motion under Rule 12(b)(1) for lack of standing and Rule 12(b)(6) for failure to state a claim, id., and, thus, the court did not analyze whether it had personal jurisdiction over the defendant.

of all sovereigns in promoting substantive social policies." Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 33 n.3 (1st Cir. 2010) (quoting Harlow, 432 F.3d at 67). "The purpose of the [G]estalt factors is to aid the court in achieving substantial justice, particularly where the minimum contacts question is very close." Nowak v. Tak How Invs. Ltd., 94 F.3d 708, 717 (1st Cir. 1998).

As to the first factor, the burden on the defendant, X-Mode's principal place of business is Virginia and the company is not headquartered (and has no offices) in Massachusetts. See D. 28-1 ¶¶ 2–4. X-Mode's CEO also attests that the company is not aware of any witness from Massachusetts who would be called to testify in the case, besides Egan. Id. ¶ 14. Accordingly, the burden that litigation would impose upon X-Mode is at least disproportionate to the Massachusetts-based plaintiff. Phillips v. Prairie Eye Ctr., 530 F.3d 22, 30 (1st Cir. 2008) (holding that the "burden on the defendant is disproportionate" if it were subject to suit in Massachusetts where its "principal place of business is in Illinois, and it has no ongoing connection in Massachusetts"). As to the second factor, the forum state's interest, Massachusetts has at least some interest here given that Egan has asserted a claim under Chapter 93A, Massachusetts' broad consumer protection statute that provides a private cause of action for consumers. D. 26 ¶¶ 73–96; see Shaulis v. Nordstrom, 865 F.3d 1, 6 (1st Cir. 2017). As to the third factor, the plaintiff's interest in obtaining convenient and effective relief, Egan, as a Massachusetts resident, id. ¶ 14; D. 34-1 ¶ 2, has an interest in litigating this case in her home state and chosen forum. See Sawtelle, 70 F.3d at 1395. As to the fourth factor, the "interest of the judicial system in the effective administration of justice does not appear to cut in either direction." See id. (quoting Ticketmaster, 26 F.3d at 211). The last factor, the "common interests of all sovereigns," may tip slightly in Egan's favor given that the forum has some interest in protecting its citizens from out-of-state providers of services, see Nowak, 94 F.3d at 717.

In sum, the Gestalt factors may weigh slightly in Egan's favor, but, overall, offer little counterbalance to Plaintiff's failure to satisfy other factors for the exercise of personal jurisdiction. See Ticketmaster, 26 F.3d at 210 (explaining that the "the weaker the plaintiff's showing on the first two prongs (relatedness and purposeful availment), the less a defendant need show in terms of unreasonableness to defeat jurisdiction"). Given that Egan has not shown relatedness and purposeful availment, personal jurisdiction over X-Mode does not comport with due process and, accordingly, the Court dismisses the FAC under Fed. R. Civ. P. 12(b)(2).[3]

## VI. Conclusion

For these reasons, the Court ALLOWS X-Mode's motion to dismiss, D. 27, and dismisses the case without prejudice. The Court also DENIES AS MOOT X-Mode's motion to stay discovery. D. 29.

**So Ordered.**

/s Denise J. Casper
United States District Judge

---

[3] The Court does not reach X-Mode's Rule 12(b)(3), Rule 12(b)(6) or discretionary transfer arguments in light of its conclusion under Rules 12(b)(2).